IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

AT OCTOBER TERM, 1848.

---

## JOSHUA DOUGHTY v. THE SOMERVILLE & EASTON RAIL-ROAD CO.

1. The grant by the State, under their right of eminent domain, to a Rail Road Company of the power of taking lands for their road, against the will of the owner, will be strictly construed; no power will be implied not intended to be granted; but to ascertain what was the intention of the Legislature, the same rules of interpretation will be used as in other cases; and a statute will not receive such construction as will defeat the object of the grant.

2. If the object of the Legislature in any enactment, or restriction, can be plainly gathered from the act, the true rule of construing any phrases that will admit of two meanings is, to adopt such meaning as will effect the object to be attained, and nothing further.

3. In a grant of power to a judge to appoint commissioners to assess value of lands required by a Rail Road Company, when the company cannot agree with the owner, it is sufficient proof that they cannot agree, if it is so

442

Doughty v. The Somerville & Easton R. R. Co.

stated in the affidavit of the engineer describing the lands required : provided the owner appear at appointment, and does not object on that account.

4. The notice of time and place of appointment of commissioners required by the 7th section of charter of " The Somerville & Easton Rail Road Company," need not contain a description of the lands to be taken.

5. An appointment of commissioners " to appraise land and assess damages to be paid by said company for the lands so required," is sufficient under the words of charter of that company ; but if it was defective, the words " pursuant to the provisions of the above recited act," would end all difficulty.

6. The charter of The Somerville & Easton R. R. Co. does not require the location of the *whole route* to be filed, before application can be made to assess the value of lands on any part ; it is sufficient if the location through such lands is filed.

7. A provision in a Rail Road charter to ascertain the value of lands taken by commissioners, and vesting lands in company upon a tender of such assessment, although an appeal from such assessment to a jury is given, does not render the appointment of commissioners unconstitutional.

This case was on *Certiorari* to remove into this court the proceedings and appointment of the Chief Justice, appointing commissioners to assess the value of the lands of the plaintiff, required and taken by the defendants in *Certiorari*, for their road.

By section 6th of the act incorporating defendants, approved Feb. 26, 1847, (*Pam. L.* 128,) they " were authorised and invested with all the rights and powers necessary and expedient to . survey, lay out, and construct a rail road or lateral roads," from Somerville, to a point opposite Easton, and a branch from thence to Belvidere, not exceeding 100 feet in width, and with as many sets of tracks or rails as they may deem necessary, with the right of entering on all lands for locating and surveying. " And when the route or routes of such road, or lateral and branch roads shall have been determined upon, and a survey of such route or routes deposited in the office of the Secretary of State, then it shall be lawful for the said company, by its officers, agents, engineers, superintendents, contractors, workmen, or other persons in their employ, to enter upon, take possession of, have, hold, use, occupy, and excavate any such lands, and to erect embankments, bridges, ferries, and all other works, necessary to lay rails, and to do all other things which

shall be suitable and necessary for the completion and repair of the said road or roads, subject to such compensation as is hereinafter provided ;" provided, that payment or tender of damages for occupancy be made before ground broken.

By section 7th "When the company or its agents cannot agree with the owner or owners of such required land, or materials, for the use or purchase thereof, or when by reason of the legal incapacity, or absence of such owner or owners, no such agreement can be made, a particular description of the land or materials required, for the use of the said company, in the construction of said road, shall be given in writing, under the oath or affirmation of some engineer, or proper agent of the company, and also the proper name, or names, of the occupant or occupants, if any there be, and of the owner or owners, if known, and their residence, if the same can be ascertained, to one of the Justices of the Supreme Court of this State, who shall cause the said company to give notice thereof to the persons interested, if known, and in this state, or if unknown, and out of this state, to make publication thereof as he shall direct, for any term not less than six days, and to assign a proper time and place for the appointment of the commissioners hereinafter named ; at which time, upon satisfactory evidence to him of the service or publication of such notice aforesaid, he shall appoint, under his hand and seal, three disinterested, impartial, and judicious freeholders, not resident in the county in which the lands or materials in controversy lie, or the owners reside, commissioners, to examine and appraise the said land or materials, and to assess the damages." "And it shall be the duty of the said commissioners to view and examine the said land or materials, and to make a just and equitable estimate or appraisement of the value of the same, and assessment of damages as shall be paid by said company, for such lands or materials and damages aforesaid."

The company had determined upon a few miles, not the whole, of the road from Somerville to Easton, which part passed through the lands of Doughty, and had deposited in the office of the Secretary of State, the survey so made of part only. In the affidavit of the engineer, annexed to the description of the

land required, it was stated that "the company cannot agree with the said Joshua Doughty, for the purchase of the same;" but no other proof of any effort or inability to agree, was offered to the Chief Justice. In the application to the Chief Justice a particular description of the lands required was given; but no such description was given in the notice given to Doughty, of the time and place of appointment of commissioners.

This cause was argued before Justices WHITEHEAD and RANDOLPH, sitting in the Branch Court, at July Term, 1848.

*Vroom* and *A. Whitehead*, for plaintiffs in *Certiorari*.

*B. Williamson*, and *F. T. Frelinghuysen*, for defendants.

Cases cited for plaintiff. 7 *Mann. & Gran.* 287; 1 *Railway Cases*, 599 & 518; 1 *Bald. R.* 203; 6 *Eng. Ch. Rep.* 548; 2 *Barn & Ad.* 108; 2 *M. & W.* 824; 2 *Y. & C.* 618; 2 *Green*, 162; 4 *Burr*, 2244; 1 *Burr.* 381, 337; 4 *Halst.* 20; 2 *Harr.* 30; 3 *Green*, 57; *Id.* 339; 6 *Wend.* 564; 4 *Dall*, 3; *Spencer*, 230; *Saxt. Ch. R.* 213.

Cases cited for defendants. 2 *Green*, 153 & 428; *Spencer*, 230; 2 *Pam. Laws*, 289, 332, 335; 1 *Bald. R.* 226.

During the course of the term the following opinion was delivered by

RANDOLPH, J. The object of this *Certiorari* is to remove into the Supreme Court, the proceedings had before the Chief Justice, under the seventh section of the act chartering the Somerville & Easton Rail Road Company, passed Feb. 26th, 1847. *Pam. L.* 131. There was also a *Certiorari* directed to the commissioners, but none to the clerk of the county of Somerset, where the plaintiff's premises are situated, and where the record is required to be filed; but copies of the proceedings were sent up with the writs under agreement between the parties: as a further writ to the clerk would cause delay, the court, with the

assent of the parties, have used the copies before them. Some discussion arose as to the rule of construction of the statute under consideration ; the power thereby given being of a high character, no less than that of taking the land and real estate of the citizen, with or without his consent, and the authority given being that of a special nature, there can be no doubt but the law must be strictly construed, but not so strictly as to do injustice or to defeat the object of the legislature. Every citizen holds his lands subject to the right of eminent domain, and the disposition of that exalted right is vested in the legislature, subject to the provisions in the constitution. When application is made to them for powers to construct a canal or rail-road, under the general principle that private rights must yield to the public good, they exercise their high functions, and divest the citizen of so much of his property as may be determined to be necessary for the proposed object, and by law designate the manner in which the company shall take possession of the land, and make compensation therefor. The proceedings in the present case are under the seventh section of defendant's charter, and its object is to obtain an assessment of the amount to be paid by defendants to the plaintiff for his land and damages ; whether his land shall be taken, was determined by the passage of the charter ; under what preliminary circumstances, and at what price, depends on future proceedings, of which those in question form a part. A special jurisdiction is conferred by the charter on the Chief Justice in this case : whether he has rightly exercised his powers therein, or whether the proceedings brought before us, be within the law and the constitution, is for this court to determine.

Under the seventh section the duties of the judge are few and simple ; he is not clothed with power to investigate the origin or organization of the company, or determine on the validity of their previous proceedings, except so far as his action may clearly depend thereon. Application was made to the Chief Justice, and such proceedings were had thereon, that commissioners were appointed, and the assessment made ; and to these proceedings the plaintiff in *Certiorari* takes several exceptions.

I. In the first place it is alleged that it did not appear before

Doughty v. The Somerville & Easton R. R. Co.

the Chief Justice, that the company could not agree either for the use or purchase of the land in question ; that in fact there was no evidence that there had been an effort to agree.    William J. Lewis, the engineer, filed with the judge an affidavit setting forth a description of the land, required, as he says, for the use of the company, and " for which the said company cannot agree with the said Joshua Doughty for the purchase thereof."    He also says, that he is the proper agent of the company to designate the land required for their use.    This certainly was sufficient authority for the judge to take the preliminary steps, and direct the proper notice to be given, and as at the appointed time the land-owner appeared, and neither raised objection to this particular, or shewed that the engineer was mistaken, and that he did agree with the company, of course this should have formed no objection to the appointment of the commissioners.    No evidence was necessary in the case ; and as the company could only hold the land required under this proceeding, for the use and exercise of their franchise, it is presumed that the statement comprises all that the statute requires.

II. It is objected in the second place, that the notice given under the order of the judge does not contain a description of the premises.    I do not think that the act requires that it should ; it requires that when the parties cannot agree, a particular description of the land required shall be given to the judge, and " notice thereof" given to the party ; but the notice thereof, is not of the particular description of the land, but of the fact that such an application has been made, and of the time and place fixed for the appointment of commissioners, all of which is contained in the notice.

III. The order appointing the commissioners, or that part of it requiring them to make the assessment, is said not to be within the meaning of the statute.    The order is " to examine and appraise the said lands, and to assess the damages to be paid by the said company, for the said lands so required as aforesaid, pursuant to the provisions of the above recited act."    And the act itself requires the commissioners " to examine and appraise the said land or materials, and to assess the damages."    If any doubt could exist as to the order, certainly that part which re-

quired the commissioners to proceed according to the provisions of the act itself, would be all sufficient ; but no doubt can exist upon a fair construction of the language used.

IV. The next objection is of a more grave nature, as it strikes at the regularity of the entire proceedings of the company.    It is, that it did not appear before the judge that the entire route from Somerville to Easton had been determined on, and a survey thereof deposited with the Secretary of State, but that on the contrary, the land owner proved that the road had been located only to the White House, being through, and some seven or eight miles beyond, the plaintiff's land, and that a survey of the same, thus far only, had been filed with the Secretary of State, prior to the application to the Chief Justice.    Whether the entire survey be a preliminary requisite, and essential to give validity to the proceedings for the appointment of commissioners under the seventh section of this act, has never been definitely settled, so far as I have been able to ascertain.

. In *Vail* v. *The Morris & Essex Railroad*, (*ante* 189,) which was a *Certiorari* to the clerk to remove the record, and which shewed upon its face that the whole proceeding had been irregular and illegal, and that the survey on which the award was based had been made after the notice given ; this court in reference to this last particular decided that the *route over the plaintiff's land* should have been determined on, and a survey thereof deposited in the Secretary's office before the proceedings were instituted : thus avoiding the question as to the preliminary survey of the entire route, as not necessary for the decision of the case, in making a determination in regard to the survey. And in *Bonaparte* v. *The Camden & Amboy R. R. Co.* (1 *Bald.* 205,) where the Circuit Court of the United States determined generally, that the location of the route, and the filing with the Secretary of State the survey thereof, are conditions precedent to the taking of the land for the construction of the work, the matter came before the court on a bill filed for an injunction, upon allegation and oath, that the company had determined on the route through complainant's land, and had made extensive preparations to take possession thereof and construct their work, to the irreparable injury of complainant, without filing

their survey, paying or tendering the amount of damages, agreeing with the complainant for the use or purchase of the land, or taking any proceeding for the want thereof, under their 13th section, (like the present 7th section) of their charter. The defendants in that suit at that time, claimed the right under the 11th section of their charter, (*Harr. Com.* 287) to take possession of the land at any time after the route was determined on, leaving the survey to be filed and the compensation or damages to be adjusted, at any future time. The court simply determined that, as the company claimed the right to take possession under a survey, or when one was filed, and subject to compensation, but not under any agreement for the use or purchase of the land, or under any proceeding under their 13th section for the want thereof; that the filing the survey was a condition precedent, though not so absolutely as to the compensation. This decision was made in October, 1830, and the next rail road charters granted were that of the Somerville & Elizabeth-town Co., and that of the Paterson & Hudson River Co. ; the latter Jan. 31, 1831, and the former Feb. 9, 1831 ; in both of which a proviso was added, similar to that appended to the sixth section of defendant's charter, and which I believe has been added in all the subsequent charters where the same is applicable. This makes a material alteration as to the charters, since that of the Camden & Amboy Co., in which it was omitted.

Under the Camden & Amboy charter, by Judge Baldwin's construction thereof, page 228, the company might proceed under the 11th section only, upon locating the route and filing the survey, without *first* paying or tendering the amount to be paid to the land-owner, or I apprehend proceeding to have commissioners appointed and an assessment made, " security undoubted," &c., would seem to be all that was necessary. But with the proviso to the 6th section, the company must either pay or tender the amount of damages before they can take possession of the land. And as neither can be done unless the amount be agreed on, the company are compelled, where there is no agreement, to proceed under and rely upon the 7th section to have the amount of damages adjusted, and the report made and filed by commissioners, which is to afford them plenary evidence of

their right to have and enjoy said land ; so far at least as regards those owners with whom no agreement has been made. As to those who have made an agreement, that of itself is sufficient evidence of the company's right. Now this is not a proceeding to take possession of the land under the 6th section, as disclosed in the Bonaparte case, but an application under the 7th section to have the damages assessed and a report thereof filed. And I find nothing in that section requiring that the survey shall be made and filed before such application and assessment can be made, but cogent reasons therein to the contrary. If the company were about to, or could take possession of the land under the 6th section, without first paying or adjusting the damages, the filing of the survey would be all important to the land-owner, as his only definite and complete evidence of the land taken or claimed to be taken, but in proceeding under the 7th section, the necessity of this is provided for by requiring that a particular description of the land required, shall be given in writing under oath to the judge, and be filed with the report of the commissioners. Why the necessity of this, if the survey must first be filed, which must contain substantially the same thing ? Not only a particular description of the land, when that is needed, must be given to the judge, but in case a gravel bank or other materials should be required for the construction of the road, and no agreement can be made therefor, the same proceeding must be taken, and a particular description of the materials must be given to the judge ; and commissioners appointed and a report made and filed as in the case of the land. Now of what consequence is it to the owner of a gravel bank, whether the entire route of a long rail road shall be determined on, and a survey thereof made and filed, before a hundred or a thousand load of his gravel can be taken and paid for ? If a particular description of his materials be made and filed, what more can be required the law to give him ? Yet the same proceeding applies to the owner of materials as to the owner of land. Of what consequence then, is it to the owner of the land at one end of a rail road, that the route at the other end, fifty or five hundred miles from him, should be located and a survey thereof made and filed, before his damages can be asses-

sed and paid for, and the road made ? Why should the legislature impose on any company a burthen so great and so unnecessary ? The only object of the whole proceeding is, not to prevent the company's taking the land, or to enable individuals to throw useless impediments in their way, but to give complete guarantee that ample compensation shall be made ; and it is not for the land-holder to say that the continuance of the road to one or another point, may affect his interest, for he is entitled to the highest compensation or damage, not only for the land, but for the inconvenience of the road, its locomotives and appendages, and whether the road be constantly used, or not at all, is of no consequence, he gets the highest pay for the greatest inconvenience, without any deductions for benefits or conveniences to him ; of course then he cannot urge these or the want of these as reasons against the proceedings of the company. Taking these matters into consideration, we might with propriety, if the case required it, say that the survey of the route over, and for several miles beyond, the plaintiff's land, was determined on and filed before this proceeding was instituted, and that is all that the 6th section can in terms require, for it does not say when the *entire* route or routes shall be determined on, and a survey thereof deposited with the Secretary, &c. A more reasonable construction may be given to it without doing violence to the language or the spirit of the section.

But whatever may be the effect, this is the proceeding of a special jurisdiction under the 7th section of the act, without other powers than is therein given, and all that is required is that it appear before the judge that the company or its agents cannot agree with the owner of the land, and that a particular description thereof be made and filed with him under oath or affirmation ; that he fix a time and place not less than six days distant, for the appointment of commissioners, and that at that time and place he make the appointment accordingly, under his hand and seal. All these requirements appear from the face of the proceedings, to have been correct and rightfully performed, and there is, therefore, no illegality or irregularity in the proceedings before the Chief Justice which would authorize us to set those proceedings aside ; nor is there on the oath or subse-

quent proceedings of the commissioners, so far as we are able to look into them, in the matter now before us.

V. There is, however, another objection, which, if valid, must of course prevail. It is that the act itself, the charter of the company, is unconstitutional and void, and of course all proceedings under it are nugatory. The point is, that under the constitution of New Jersey, private property cannot be taken for public use, without just compensation first made to the owners. We might answer this by saying that this is not a proceeding to take private property for public use, but only for the purpose of ascertaining what shall be determined to be just compensation to the owner, which shall be made before the property is taken. But I consider the law itself clearly within the constitutional provision. It is that payment, or tender of payment of all damages, shall be made before the company takes possession of the land ; the objection is as to the tender, which may be made upon the filing of the report, for the amount therein specified, but which may be increased by a jury called under the 8th section. If the parties cannot agree as to the amount, or the owner will not receive the sum offered, the law must designate some mode of fixing the amount, and if the party still refuses it, a tender must be considered as equivalent to payment, else one obstinate land-owner will have the power to defeat the object of the legislature. This, however, is not contended for ; but it is insisted that the tender shall not be made till there is an end of litigation, and the amount of damages be finally assessed by a jury ; but if the legislature have a right to say that a tender of the amount found by a jury, shall be considered compensation, they must also have the right to say that a tender of the amount awarded by commissioners will have the same effect, and the additional trial allowed cannot render that unconstitutional which before was constitutional.

I think the proceedings therefore are regular, legal and constitutional, and must be affirmed.

In this opinion WHITEHEAD, J. concurred, except on the 4th point, the necessity of filing a survey of the *whole route*, before the application for commissioners, on which he dissented from Justice RANDOLPH, holding the filing a survey of the *whole route* necessary. On the constitutional question he gave no opinion.

By agreement of parties, a re-argument was ordered, and was had by the same counsel during the same term before Justices WHITEHEAD, RANDOLPH and CARPENTER, upon the first point on which Justice RANDOLPH and WHITEHEAD differed, and also upon the constitutional question.

At the term of October, 1848, the following opinions were delivered by WHITEHEAD and CARPENTER, JJ.

WHITEHEAD, J.　The Chief Justice, in my opinion, had no authority to appoint commissioners upon the application of the company, until the entire route of the road had been determined upon and a survey thereof deposited in the office of the Secretary of State.　By the 6th section of the act, authority is given to the company and its agents, to enter at all times upon all lands and waters, for the purpose of exploring, surveying, levelling, or laying out the route or routes of such rail road, or lateral and branch roads, and of locating the same.　*And when the route or routes of such road, or lateral and branch roads, shall have been determined upon, and a survey of such route or routes deposited in the office of the Secretary of State, then it shall be lawful for the company, &c., to enter upon, &c.*　In case the company or its agents cannot agree with the owners of land, then provision is made by the 7th section for the appointment of commissioners, by one of the justices of this court, to examine and appraise the land, &c.　No action can be taken by the company under this section, until it has complied with the provisions of the next previous section ; for the proceedings under the 7th section are all based upon the supposition that the survey has been made and filed.

It being conceded that a part only of the route has been located, and a survey thereof deposited in the office of the Secre-

tary of State. The question is, whether the appointment of the commissioners was lawful. I think not.

I hold that all statutes incorporating companies with authority to take the lands of owners against their consent, should be construed strictly. For it should be borne in mind that this power is delegated to these companies, not for any great state necessity, but for a supposed public convenience. The right of the plaintiff to his lands in this case being clear and undisputed, this court ought not to suffer it to be invaded under any doubtful authority. We should be satisfied that the company have substantially, if not strictly, complied with all the prerequisites of their charter. Now it appears to me that the language of the act is clear and explicit, requiring the entire route of the road to be the first located, and a survey thereof deposited in the office of the Secretary of State, before any action is had under the 7th section of the act for the appointment of commissioners. The route is spoken of as an entirety. No provision is made for surveying it in sections, as is the case with some of the rail road charters. The language is *when* the route shall have been determined upon, and survey deposited, &c., *then* it shall be lawful, &c. To my mind it appears to be as imperative on the part of the company as prerequisite to any action under the 7th section, as the acceptance of the charter by the company, or its organization.

It is not worth while to speculate upon the reasons which influenced the legislature in requiring this preliminary proceeding on the part of the company; whether it was to ascertain the practicability of the route, or as furnishing a pledge to the community that the entire road would be constructed. Nor is it necessary to inquire whether the landholder is interested in the entire route. It is sufficient that it is made an indispensable prerequisite to any steps by the company to take possession of the lands of the owners against their consent.

To say the least, I apprehend there is nothing in the case which ought to induce the court to depart from the ordinary rules of construction of statutes in favor of the company. To say the company may proceed to acquire title to the lands before the route has been determined on and the surveys done

ed, is doing manifest violence to the language of the act. For ascertaining the route of a portion of the road, and depositing the survey thereof, is surely not determining upon *the route of the road*, and depositing the survey of the same.

The intention of the Legislature, which must govern, is to be ascertained by reference to the language of the act, and the settled rules for the construction of statutes. Such a reference seems to me to establish beyond controversy my views of the case.

In *Broom's Legal Maxims, p.* 248, the rule familiar to lawyers is laid down in these words: "The only rule for the construction of acts of Parliament is, that they should be construed according to the intent of the Parliament which passed the act. If the words of the statute are in themselves precise and unambiguous, then no more can be necessary than to expound the words in their natural and ordinary sense." And again, "It is an established rule of construction that an act of Parliament shall be read according to the ordinary and grammatical sense of the words; unless being so read, it would be absurd or inconsistent with the declared intention of the Legislature to be collected from the rest of the act."

Judge Kent, in his *Commentaries Vol.* 3, *p.* 462, says: "The words of a statute are to be taken in their natural and ordinary signification." In *Dwarris on Statutes, p.* 708, the rule is laid down in the same way. The same author further remarks: "Judges are not to presume the intention of the Legislature, but to collect it from the words of the act of Parliament, and they have nothing to do with the policy of the law. Judges are not to construe statutes by equity, but to collect the sense of the Legislature by a sound interpretation of its language." And again, "the fittest course in all cases where the intention of the Legislature is brought into question, is to adhere to the words of the statute, construing them according to their nature and import, in the order in which they stand in the act of Parliament."

Such being the rules of construction, and the words of the act appearing to me to be precise and unambiguous, I cannot conceive that it should be held to authorize the proceedings complained of by the plaintiff, until the preliminary requisition

in the form the Legislature thought fit to express it, is fully complied with. The business of courts is to ascertain the true intention of the Legislature. And whenever that can be done, it is their imperative duty to obey it, whatever may be their opinion of its wisdom or policy.

I express no opinion upon the constitutionality of that provision of the act prescribing the mode of compensation to owners of the lands, required for the rail-road.

CARPENTER, J. This cause has been twice argued. The first argument was heard by Justices WHITEHEAD and RANDOLPH, who coincided in opinion except as to one point. I have with them heard a second argument, which was ordered in consequence of that disagreement. The constitutionality of the charter of the company in regard to the taking the land on the route of the road, has been again mooted. Both judges, however, who heard the first argument, still hold the act to be constitutional, so far as its operation is drawn in question in this proceeding which relates solely to the validity of the order made by the Chief Justice. It is therefore unnecessary for me to express any opinion on this matter, and it only remains to examine the case so far as regards the single point on which they differ.

It is alleged on the part of the plaintiff that the application to, and the order made by, the Chief Justice were premature—that he had then no authority to make appointment of commissioners. It is said that the *entire* route of the road must be determined on, and a survey of such route deposited in the office of Secretary of State, before it is lawful for the company to apply for the appointment of commissioners, and to proceed, in the mode pointed out in its charter, to take possession of the land of the plaintiff and others; and that this condition precedent, as it is called by counsel, must appear on the face of the proceedings to have been complied with, in order to warrant and sustain the appointment.

The act of incorporation or charter of the company (26th Feb. 1847, *Pamph. Laws p.* 128,) clearly provides two modes by which the land necessary for the purposes of the road may be

acquired; in the one case by agreement, in the other *in invito* in regard to the land-holder. By the 6th section it is in substance enacted, that the company shall have power to construct a rail-road from Somerville to a point on the Delaware river near Easton, and it authorises the officers of the company to enter upon any land for the purpose of exploring and locating the route of the road; and *when the route or routes of such road or lateral or branch roads shall have been determined upon, and a survey of such route or routes deposited in the office of the Secretary of State, then* it shall be lawful for said company by its officers, &c., to enter upon and take possession, &c., of any land suitable or necessary for the completion or repair of the road, subject to compensation thereinafter provided. This section undoubtedly authorises the company, after making and filing their survey as above prescribed, by agreement with the owners to acquire title to, and take possession of, such land as may be requisite for the purposes of the road; but it seems to me that it goes further. The land is to be taken subject to such compensation as is thereinafter provided, and the statute then proceeds to prescribe the mode in which that compensation shall be ascertained: which may be by agreement, or if no agreement can be made, by means of commissioners to be appointed for that purpose. In the same 6th section there is this proviso, *provided always*, that the payment, or tender of payment, of all damages for the occupancy of lands through which the said rail-road may be laid out, be made before the said company shall enter upon or break ground in the premises, except for the purpose of surveying and laying out said road, unless the consent of the owner be first obtained.

This proviso, unless the consent of the owner can be first obtained, makes payment or tender, in all cases, a condition precedent to the right of the company to take the land; and must be understood in connection with and applied to all the enactments in the succeeding sections wherein the proceedings are prescribed in relation to settling the amount of compensation to be paid or tendered, in cases where the company or agents cannot agree with the owner. It is a controlling provision of the statute. In no case and in no way can possession be ob-

tained, except by agreement, unless compensation be first made, or what is equivalent thereto, tendered.

I by no means suppose the 6th and 7th sections are to be construed independently of each other; or the latter of the former, as has been urged by the counsel of the company. As I take it, both relate to the same subject matter, the obtaining the land requisite for the purposes of the road, " subject," to use the language of the statute, " to such compensation as is here-inafter provided;" the mode of ascertaining which compensation is then settled by the 7th and 8th sections; which mode thus prescribed seems directly referred to by the phrase just cited. Not only by the phraseology cited, but in the nature of things, under the ordinary rules by which statutes are construed, as it seems to me, must these sections, relating to the same matter, be considered in connection with each other. They are to be taken together, and compared in the construction of them, because they all have one object in view, and the statute should be so construed as to be consistent and harmonious in its several parts and provisions. The determining the route and the filing the survey of that route, are made the first and necessary steps to taking and holding the land, whether that land is to be taken by agreement or otherwise; subject in the latter case, by express reference, to such compensation as the next section of the statute proceeds to provide for and ascertain.

In the view then which I take of the statute, the proceedings under the 7th section, which become necessary when no agreement can be made with the land-holder, are founded on the duty prescribed in the 6th section. Before the company can take any step, it must determine the route and file a survey thereof, by which the land necessary shall be distinctly ascertained. There can be no legal disagreement, as was said by one of the counsel of the plaintiff, as to the land requisite or the compensation to be made therefor, until the route be determined and filed, and the land needed thus ascertained. It was so held, as I understand, in the case of *Vail* v. *The Morris & Essex Rail Road Co.* (a) referred to by Justice RANDOLPH, but in which case no opin-

(a) See Ante, p. 189.

ion was expressed as to a survey of the entire route prior to an application for the appointment of commissioners.

But it was said that not only must the route be determined on and filed, prior to an application to a Justice of the Supreme Court for the appointment of commissioners, but that it must so appear on the face of the proceedings. The plaintiff not relying merely on the fact that this did not so appear, but chiefly on his construction of the statute that the *entire* route of the projected road must be first determined and the survey thereof filed, took a rule upon the Chief Justice, by whom the appointment of commissioners in this case was made, to certify in regard to the proof before him. It appears, by the answer of the Chief Justice to this rule, that the plaintiff by his counsel appeared before him, and objected to the appointment, and produced in support of his objection, a certified copy of a *survey made and filed by said company,* of the route of the road from Somerville, over and through the land of the plaintiff, to the White House road, being a short portion only of the entire route. The order made by the Chief Justice, after reciting the line of the road over the land of the plaintiff, then states that it is "that which has been designated by the engineers of the said company in the location of the route of the said rail-road throughout the lands of the said Joshua Doughty." Without, therefore, inquiring whether this prerequisite must appear on the face of the proceedings, or expressing any opinion upon the force of the objection, it is sufficient to say that the making and filing does appear; but not of the entire route or whole line of the projected rail road.

The inquiry then is reduced to this: must the entire route of the whole line be determined on and filed before an application can be made to a Justice of the Supreme Court for the appointment of commissioners, or any step be taken to acquire possession of any land in order to commence the construction of the road?

It was urged on the one side, in the argument, and not denied on the other, that the determination of the route of the road, and the filing the survey was a fixing of the location of the road on the land over which it might pass, in execution of a power

given by the Legislature; that it was single act, and that the time being determined on and the survey filed, the power was executed. There is no authority in this charter, as is the case in that of the Morris Canal Company, and perhaps in others, afterwards to vary the line as from time to time the company may think it convenient or necessary. The survey once filed, the route is fixed, and this act is an authoritative notice to landholders and all others interested of the line of the road, which is thus officially made known. Therefore, in the case of the Morris & Essex Rail Road, the company, under a provision of its charter of the same character, having deposited a survey of the whole line of the road, from which it afterwards became expedient to vary, found it necessary to apply to the legislature for authority for that purpose. The supplement to the charter of this company (*Act 2d March*, 1846, *Pamph. L.* 222) gives the authority, and as the construction of the charter in regard to filing a survey of the whole route or otherwise might reasonably be considered doubtful, out of abundant caution, as I take it, authorised the company to file the survey of the route in distinct sections.

In this case the projected road is of very considerable length, over a difficult country, and great obstacles are to be overcome in its construction. Much deliberation upon the part of skilful men must be had, and probably repeated examinations of the ground to be passed over, before the precise and identical line of the road can be judiciously and safely adopted. The legislature has given the company two years more, and not until the expiration of which is it required to complete the road. In view of the embarrassment that would necessarily be created by holding the company bound, as preliminary to the acquisition of any land or right, and to the commencement of the work, to make and file a survey of the whole route, I think the court ought not to adopt such a construction, unless necessary to do so from the unequivocal language of the charter. This court has none of the responsibility of taking the land of the citizen for this public purpose. The policy of these laws having been adopted by that power in the state which is supreme within its constitutional limits, the court is bound to construe the charter

of the company in due subservience to the intention of the Legislature for the purpose of carrying its will into effect. The company has no power that it does not derive from the express provisions of its charter. It is entitled to, and we are bound to give, a fair and reasonable construction to that charter: its language is to be understood and construed without laxity on the one hand, or being strained from its natural meaning on the other.

The phrase " the route of the road " uncontrolled by the context, and unexplained by the object of the provision of which it forms a part, might be understood to mean the entire line of the road from its commencement to its termination. But certainly it may be understood in a more limited sense, if the context and the object of the enactment in which it occurs should evince an intention to restrain its meaning. The real intention, when accurately ascertained, will always prevail, even over the literal sense of terms ; and the intention is to be taken or presumed, according to what is consonant to reason and sound discretion.

The chief object of the 6th section is to empower the company to acquire the land necessary for the purposes of the road, subject to compensation to be made by the company to the respective landholders, which compensation, in connection with the 7th and 8th sections, it secures and ascertains. This phrase, which occurs in the preliminary requirement, that the route shall be first determined and a survey filed, is used in the act in connection with the provisions by which rights of the landholders respectively are secured. The filing " the survey of the route " is prescribed, and solely prescribed, so far as I can see, as a preliminary to any steps to be taken by the company to obtain of the owners respectively the land which it is necessary to take for the purposes of the road. Unless done, no person could know what part of his property was put in requisition, or have any check on the company against altering or deviating from the route determined on. It is to secure them severally, by first specifically designating to each individual affected, the land which it will be necessary for him to surrender to the pub-

lic use authorized by the Legislature. It has direct reference, under this construction, and in this view, to the land about to be occupied by the road. The phrase is used in reference to the steps about to be taken to obtain that land either by consent, or if that cannot be obtained, by proceedings under the 7th section.

It cannot be pretended that but one application and one appointment of commissioners can be made, and that the assessment must be made by one set of commissioners in regard to all the landholders on the line of the proposed road with whom the company is unable to agree. Undoubtedly the company might successively apply for the appointment of commissioners in each case of disagreement, were such a course of proceeding convenient and practical. Whenever the company cannot agree with the owner, it may apply for the appointment of commissioners. The filing the survey of the route is preliminary to such application, for then only is the route fixed on the land in regard to which the failure to agree is to form the ground for application for the appointment of commissioners. The proceedings of which this is preliminary, being several, the object of the provision being the security of the owners of the land respectively, I think the proper construction is, that it is the route over the lands about to be taken, in regard to which the appointment is made, that is meant by the words used.

It was said that the land owner is interested in the completion of the entire route, and where the other parts of the route shall be carried. He may feel a personal interest in the determination of all parts of the route, but certainly it forms no basis upon which he can graduate his claim for compensation. It is of no consequence in that point of view, for he is entitled to the value of the land, and all damages he may suffer, irrespective of supposed and prospective benefits. The filing of the entire route would form no guarantee for its completion; that is secured by another section. These sections look only to the security of the respective owners of the land in regard to compensation, and I think a construction should be given which is consistent with that object.

I am of the opinion, therefore, that so far as it depends upon the point submitted to me, the order of the CHIEF JUSTICE should be affirmed.

Order affirmed.

CITED *in Coster* v. *N. J. R. R. Co.*, 3 *Zab.* 230; *In Re Chatham and Little Falls*, 6 *Vr.* 507; *State* v. *Hudson Tunnel R. R. Co.*, 9 *Vr.* 554; *Mor. Can. &. B'k'g Co.* v. *Central R. R. Co.*, 1 *C. E. Gr.* 427.